UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Aaron J. Fulton,                                    Case No. 20-cv-1063 (PJS/DTS)

    Plaintiff,

v.

Honkamp Krueger Financial Services, Inc.,           **ORDER**

    Defendant/Cross-Claimant,

v.

Mariner, LLC,

    Cross-Defendant.

---

Honkamp Krueger Financial Services, Inc. (HKFS) adjourned its deposition of Mariner, LLC's in-house counsel Annie Taylor after she declined to answer certain questions on the ground that doing so would require disclosure of attorney-client privileged communications. It then brought this Motion to Compel Deposition Testimony. Docket No. 114. The Court denies HKFS's motion, but will permit it to continue Taylor's deposition to ask specific questions — not broad, open-ended questions — consistent with this order and memorandum, if it is not satisfied with the information Taylor provided in her declaration and previous deposition answers.

## BACKGROUND

HKFS sued Mariner for tortious interference with contractual relations with its then-employee Aaron Fulton. Mariner asserted an advice-of-counsel defense based on the opinion of outside counsel that the restrictive covenants in Fulton's agreements with

HKFS are not enforceable. The factual background of this case is described in the Order denying HKFS's motions for preliminary injunctions. Docket No. 86. The Court recites the following facts relevant to the present motion.

In early 2020, while employed by HKFS, Fulton began talking with Mariner about possible employment. Fulton Decl. ¶ 12, Docket No. 18; Taylor Decl. (June 4, 2020) ¶ 3, Docket No. 17 (Case No. 20-cv-1138). Mariner was aware of the restrictive covenants in Fulton's agreements with HKFS. Order at 3, Docket No. 86. In March 2020 Mariner retained outside counsel John Ella to provide an opinion on the enforceability of the restrictive covenants. Sandahl Decl. Exs. C & D, Docket No. 104-1. Ella sent a draft opinion letter to Mariner's in-house counsel Annie Taylor on April 8, 2020 and sent a final opinion letter to her on April 17, 2020 in which he opined the covenants are not enforceable. *Id.* Exs. E & F.

Fulton received a formal offer of employment from Mariner on April 17, 2020. Fulton Decl. ¶ 14, Docket No. 18 (Case No. 20-cv-1138). He terminated his employment with HKFS on May 1, 2020 to take the job with Mariner. Order at 1, 4, Docket No. 86. That same day he filed this lawsuit against HKFS seeking a declaration that the restrictive covenants are unenforceable. *Id.* HKFS counterclaimed, alleging breach of contract and misappropriation of trade secrets. *Id.* at 1-2. On May 7, 2020 HKFS filed a separate lawsuit against Fulton in Iowa, and on May 11, 2020 HKFS filed a lawsuit against Mariner in this Court for tortious interference with contractual relations. *Id.* at 2. Mariner asserted an advice-of-counsel defense, stating it reasonably relied on Ella's opinion in hiring Fulton. *Id.* at 18. The two cases in this Court were later consolidated. *Id.* at 2.

On February 18, 2021 HKFS deposed Taylor both in her individual capacity and as a corporate designee under Rule 30(b)(6). She was designated to testify about Mariner's communications with opinion counsel Ella relating to the employment of Fulton prior to May 3, 2020. Depo. Tr. 15-18, Sandahl Decl. Ex. A, Docket No. 117.[1] She was not designated to testify about Mariner's communications with any other attorney or about any other communications and meetings relating to Fulton or his agreements with HKFS. *Id.*

Taylor testified she did not make the decision to hire Fulton and she does not know who at Mariner made the hiring decision. *Id.* at 59. She had conversations with trial counsel Katie Connolly about litigation strategy concerning Fulton on or about March 11, 2020. *Id.* at 57. She had conversations with Mariner employees Katelyn Ross, an attorney, and Anne Dorian, Senior Vice President and General Counsel, about Ella's opinion that the covenants are unenforceable but she believes those conversations related to litigation strategy. *Id.* at 63-65, 73-75. She recalled conversations with Cheryl Bicknell, Chief Strategy Officer and Chief Operating Officer, about Fulton's employment agreement with HKFS that she believes are privileged and included litigation strategy. *Id.* at 54-56. She did not recall whether she had conversations with Bicknell regarding Ella's opinion letter after April 17, 2020. *Id.* at 72-73. She declined to answer certain questions on the ground that answering them as phrased would require her to disclose attorney-client privileged communications. *Id.* at 55-56, 65, 74-75. Taylor's counsel objected and

---

[1] HKFS submitted portions of Taylor's deposition transcript as Exhibit A in Docket No. 117. The complete transcript is at Docket No. 126-1 as Exhibit A to the Connolly Declaration.

instructed Taylor not to answer to the extent that the answer relates to litigation advice. *Id.* at 55, 64-65, 68, 70, 72, 74.

HKFS adjourned the deposition and on February 22, 2021 brought this motion to compel. Docket No. 114. Oral arguments were heard on March 9, 2021. Docket No. 132.

## ANALYSIS

A party that asserts an advice-of-counsel defense waives the attorney-client privilege as to communications and documents relating to the advice, *i.e.,* the subject matter of the waiver. *See Minnesota Specialty Crops, Inc. v. Minnesota Wild Hockey Club, L.P.,* 210 F.R.D. 673, 674-75 (D. Minn. 2002). The opposing party is entitled to discover communications related to the substance of the advice-of-counsel defense – in this case, advice Mariner received on the enforceability of the restrictive covenants. *See id.* at 674-75, 678-79. However, the waiver excludes communications regarding "advice concerning the litigation strategy." *Id.* at 678.

Rule 37 provides that a party may bring a motion to compel an answer when a deponent fails to answer a question. Fed. R. Civ. P. 37(a)(3)(B)(i). The party taking the deposition has the option of completing or adjourning it before moving for an order to compel an answer. *Id.* 37(a)(3)(C).

District of Minnesota Local Rule 37.1 (Form of Discovery Motions) provides, in relevant part:

> A motion under Federal Rule of Civil Procedure 36(a)(6) or 37 must contain, either in the motion itself or in the accompanying memorandum –
>
> * * *
>
> (c)   the text (which may appear in an exhibit to which the motion or memorandum refers) of any . . . question . . . in dispute, together with each answer, response, or objection to any such . . . question . . . .

4

HKFS moves to compel Taylor to testify about her communications with Mariner employees regarding the enforceability of Fulton's agreements with HKFS and Ella's opinion letter. Motion ¶¶ 4-6, Docket No. 114; HKFS Br. 2, Docket No. 116. HKFS agrees that only communications before May 1, 2020, the day Fulton resigned and filed his declaratory judgment action against HKFS, are relevant to the advice-of-counsel defense. *See, e.g.,* Depo. Tr. 49-52, 63, Connolly Decl. Ex. A, Docket No. 126-1. Mariner responds that HKFS asked Taylor overly broad questions that, if answered as phrased, would require the disclosure of privileged communications outside the scope of the subject matter waiver. Mariner Br. 1-2, Docket No. 125. It identifies several specific questions HKFS could have asked and submits a declaration by Taylor with factual information about her communications. *See id.* at 11; Taylor Decl. (Mar. 2, 2021), Docket No. 127. Mariner contends HKFS wants the Court to compel answers to questions it never asked and that HKFS failed to comply with Local Rule 37.1's requirement that the moving party identify the specific questions, answers, and objections on which it wants the Court to rule. Mariner Br. 2, 17 (quoting HKFS's brief at 5: "Specifically, *and without limitation*, Taylor's relevant testimony and objections are as follows: . . . ." (emphasis supplied)), Docket No. 125.

The Court agrees with Mariner that HKFS's motion seems to be looking for more general guidance rather than merely teeing up specific questions to be ruled on as contemplated by Local Rule 37.1. Apparently this is so because HKFS construes Taylor's testimony as a general refusal to testify about the relevant subject matter. But the Court finds three questions among the transcript excerpts that HKFS has reproduced at pages

5

5 to 9 of its brief that Taylor did not answer on the ground that they called for privileged communications: "Can you summarize any of the conversations that you had?"; "And what were the substance of those conversations between you and Ms. Dorian?"; and "What was the substance of those conversations?" As discussed below, those questions are overly broad and the Court denies HKFS's motion to compel answers to them as phrased. Two other questions, of the "is it your position that" variety, are not questions related to the advice Mariner received on enforceability of the covenants. Rather, they were asked for the purpose of making a record regarding Taylor's previous testimony in response to HKFS's overly broad questions. Taylor's responses do not demonstrate a general unwillingness to testify about the relevant subject matter.

At the time it deposed Taylor, HKFS assumed — given that Ella only sent his opinion letter to Taylor, and Taylor was not the one who made the decision to hire Fulton — that Taylor must necessarily have communicated with decisionmakers about Ella's opinion that the restrictive covenants are not enforceable. Otherwise, Fulton would not have been hired. *See* HKFS Br. 1 ("The people at Mariner who decided to hire Fulton thus could not have relied on its outside counsel's opinion in hiring Fulton without communicating with Ms. Taylor."), 9 ("Even though Ms. Taylor **necessarily** had to communicate with others at Mariner about Fulton's agreements for Mariner to establish its justification defense, Mariner has refused to allow testimony on those communications."), Docket No. 116.

Mariner says HKFS's premise is incorrect and that HKFS would have discovered this had it not persisted in asking overly broad questions that intruded into privileged communications. Mariner Br. 10-12, Docket No. 125. Mariner submits a declaration by

6

Taylor containing information about which she would have testified if asked. *See* Taylor Decl. ¶ 11, Docket No. 127. Specifically, Taylor states she read and relied on Ella's opinion letter but did not communicate its contents to decisionmakers at Mariner. *Id.* ¶¶ 8-10. The decisionmakers were in the process of deciding from a business standpoint whether to hire Fulton, and based on Ella's opinion Taylor decided not to intervene to stop the hiring process. *Id.* ¶¶ 9-10. Mariner asserts that is how the process worked in hiring Fulton. Whether it is sufficient under *Sysdyne Corp. v. Rousslang,* 860 N.W.2d 347 (Minn. 2015), to constitute reasonable reliance for purposes of Mariner's justification defense is not before the Court in this motion.

HKFS's problem is that it did not ask Taylor specific, focused questions to establish the factual record regarding her communications with Mariner employees in order to test the reasonableness of Mariner's reliance on Ella's opinion. When the deponent is an attorney and issues of attorney-client privilege hover in the background, the party taking the deposition generally cannot ask broad, open-ended questions without bumping up against potentially privileged communications. It is HKFS's responsibility in the first instance to test the bounds of privilege by formulating specific questions for Taylor so it can discern where she draws the line regarding what she will (or can) answer and what she will not. HKFS did not do so.

HKFS asserts that Taylor in essence made a blanket refusal to answer questions about her communications with Bicknell, Ross, and Dorian such that it was futile to continue to question her. That mischaracterizes the deposition record. While a few of Taylor's statements, if read in isolation, may seem to be broad refusals, the Court finds

7

the record is clear that the statements were a response to the overbreadth of HKFS's questions and reflect her belief that the conversations at issue related to trial strategy.

Taylor answered many of HKFS's questions. But when she identified Mariner employees Bicknell, Ross, and Dorian as persons with whom he had conversations, HKFS asked her very broadly to "summarize" and state "the substance" of those conversations. Taylor and her counsel objected that she could not do so without disclosing privileged communications. For example:

> Q: All right. I want to go back to your conversations with Cheryl Bicknell. I believe you testified that after this Mariner's Wealth Advisors' Mariner Day for Mr. Fulton on February 21st, you had someplace between zero and ten conversations with Miss Bicknell about Mr. Fulton's employment agreement with HKFS; is that right?
>
> A: Yes.
>
> Q. Okay. Do you remember what the substance of those conversations were?
>
> A. Not entirely.
>
> Q. **Can you summarize any of the conversations that you had?**
>
> MARINER COUNSEL:  And I instruct the witness not to answer to the extent that it relates to advice of litigation counsel.
>
> * * *
>
> A. I do recall, high level, what some of the conversations were but I believe it would all be protected by the attorney/client privilege.

Depo. Tr. 54-55, Docket No. 117.

> Q. All right. And you had conversations with Ms. Dorian at some point during the period of time after you retained Mr. Ella; is that correct?
>
> A. Yes.
>
> Q. Okay. **And what were the substance of those conversations between you and Ms. Dorian?**

8

MARINER COUNSEL:  Objection, to the extent it calls for information protected by the attorney/client privilege as it relates to trial counsel.

HKFS COUNSEL:  Okay. So are you directing her not to answer that question?

MARINER COUNSEL:  I am directing her not to answer to the extent it calls for information protected by the attorney/client privilege as it relates to trial counsel.

Q. Okay. You can answer, Miss Taylor.

A. **I believe my conversations would be related to litigation strategy related to this matter.**

Q. Okay. So you're not -- you're not willing to answer those questions based on the attorney/client privilege; is that your testimony?

A. Yes.

Q. Okay. Same question with Ms. -- with -- with regard to Ms. Ross: How many conversations did you have with Ms. Ross about the communications and the retention and the opinion of Mr. Ella?

MARINER COUNSEL:  That -- there was a lot to unpack there.

* * *

MARINER COUNSEL: Yes. Objection; compound question.

* * *

A. I can't recall how many conversations.

Q. Well, is it less than ten or more than ten?

A. I can't recall.

Q. Do you recall when those conversations took place?

A. No.

Q. **What was the substance of those conversations?**

A. That would be protected by attorney/client privilege.

9

*Id.* at 64-66.

HKFS then halted the deposition. It insisted "these are . . . not broad questions," *id.* at 71, while Mariner's counsel objected that "the questions . . . are so broad as to encompass any communications which relate in any way" to the agreement, "aren't specific to the justification defense," "seek information relating to anything, including trial strategy," and that the facts HKFS claimed to be entitled to "are not the questions that you're asking," *id.* at 68, 70. The deposition briefly resumed but faltered when HKFS again asked Taylor for "the substance" of her conversations, to which she responded that they related to trial strategy:

> Q. So you had conversations with Ms. Ross and Ms. Dorian about Mr. Ella's opinion; is that -- is that fair?
>
> A. Yes.
>
> Q. Okay. And what did you tell Miss -- what -- well, actually, what -- **what was the substance of your conversation with Miss Dorian** regarding the opinion letter that you received from Mr. Ella relating to Mr. Fulton's agreement with HKFS?
>
> MARINER COUNSEL: And I am going to instruct the witness not to answer as to anything other than the substance of Mr. Ella's opinion. **So to the extent there were any conversations with those individuals about trial strategy, those fall without -- outside of the scope.**
>
> A. **I believe that any conversations with Ms. Dorian regarding Mr. Ella's opinion would relate to trial strategy.**
>
> Q. Same question with regard to Ms. Ross: Did you have any conversations with Ms. Ross after the time period that Mr. Ella was retained by Mariner Wealth Advisors to provide advice about Mr. Fulton's agreement in which you discussed Mr. Ella's opinion as to the enforceability of Mr. Fulton's agreement with HKFS?
>
> A. **I believe all of my conversations with Ms. Ross regarding Mr. Ella's opinion would relate to trial strategy.**

*Id.* at 74-75. HKFS then suspended the deposition. *Id.* at 75.

10

The Court, while denying HKFS's motion to compel, will give it the opportunity to continue Taylor's deposition to inquire into her communications regarding the relevant subject matter in a narrow, focused manner that does not simply ask for "the substance" of her conversations. The Court further notes, in light of some of the discussion during oral arguments, that advice on the enforceability of the restrictive covenants should not be conflated with advice on litigation exposure, risk assessment, and litigation strategy. Some communications on these subjects may, but do not necessarily overlap, and it is HKFS's responsibility to inquire step-by-step into the facts regarding Taylor's communications. At her deposition, HKFS did not ask probing questions to determine whether, or to what extent, her conversations with Mariner employees fell within the realm of privileged communications or instead fell within the subject matter waiver for communications relating to the substance of the advice Mariner received on enforceability. HKFS may do so now, if it is not satisfied with the information Taylor has provided in her declaration.

## ORDER

The Court, being duly advised in the premises, upon all of the files, records and proceedings herein, now makes and enters the following Order.

IT IS HEREBY ORDERED that HKFS's Motion to Compel Deposition Testimony [Docket No. 114] is DENIED; however, HKFS may continue Taylor's deposition to ask specific questions, consistent with this order and memorandum, if it is not satisfied with the information Taylor provided in her declaration and previous deposition answers.

Dated: March 24, 2021  s/ David T. Schultz
DAVID T. SCHULTZ
U.S. Magistrate Judge